DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CHAD MARTIN TAVARES,**
Appellant,

v.

**PATRICE SHANTE ENOCH,**
Appellee.

No. 4D19-2135

[August 5, 2020]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Kathleen J. Kroll, Judge; L.T. Case No. 502017DR004750XXXXMB.

Curt Sanchez and Nicole Nicolette Mace of The Law Offices of Curt Sanchez, P.A., West Palm Beach, for appellant.

Patrice Shante Enoch, Tallahassee, pro se.

GERBER, J.

The father appeals from the trial court's final judgment establishing a parenting plan favoring the mother. The father argues the trial court erred in three respects, by: (1) taking eight-and-a-half months after a half-day trial to issue its final judgment, which allegedly included multiple factual errors leading to the parenting plan favoring the mother; (2) failing to rule within the final judgment on the father's pre-trial motion for indirect civil contempt, alleging the mother violated a temporary relief order by not timely returning the child to the father; and (3) establishing a summer break time-sharing schedule requiring multiple exchanges of the child between Leon County and Palm Beach County, instead of one mid-summer exchange as each parent had proposed.

On the first two arguments, we remand with instructions for the trial court to reconsider its final judgment in light of one factual error and after ruling on the father's motion for indirect civil contempt. On the third argument, we conclude without further discussion that the circuit court was within its discretion to find that multiple visits with each parent was in the child's best interest instead of lengthy single visits with each parent.

## 1. _Alleged Factual Errors Caused by the Final Judgment Delay_

On the first argument, we share the father's concern about the lengthy delay in issuing the final judgment, especially given that, at the end of the trial, the trial court told the parties, "Give me a good week, okay, at least." _See_ Fla. R. Jud. Admin. 2.250(a)(1)(C) (a presumptively reasonable time period for the completion of a contested domestic relations case is 180 days _from filing to final disposition_); _Schang v. Schang_, 53 So. 3d 1168, 1169–70 (Fla. 1st DCA 2011) ("In family law cases in particular, trial courts have a responsibility to render their decisions under circumstances which give no doubt but that the matter was seriously _and promptly_ considered.") (emphasis added; citation and internal quotation marks omitted).

Having shared our concern, we nevertheless conclude the trial court's seventeen-page final judgment indicates the court's careful consideration of the testimony, admissible evidence, and the child's best interest. Included in that consideration was a detailed analysis of each of the twenty factors enumerated in section 61.13(3), Florida Statutes (2018). Our review has not revealed "numerous" discrepancies between the evidence and the terms of the final judgment, as we have observed in other delay cases warranting reversal and remand for another evidentiary hearing. _See, e.g., Donn v. Donn_, 733 So. 2d 581, 582 (Fla. 4th DCA 1999).

However, we agree with the father that the final judgment contains one clear material error in its findings of fact. That is, in the final judgment's paragraph 11g., the trial court incorrectly stated, "The Father had one minor criminal case before the child was born," when the undisputed evidence was the father had no criminal record, and instead the mother admitted she was fired from a job due to having committed identity theft and fraud, both being crimes of dishonesty.

We cannot say from our review of the record that the trial court's factual error necessarily resulted from the lengthy delay in issuing the final judgment. However, given that factual error's possible materiality to the final judgment's credibility and parenting plan determinations, remand is necessary for the trial court to correct that factual error in the final judgment and re-weigh the correct facts in those determinations.

As for the father's references to other alleged factual errors in the final judgment's findings of fact, we would more fairly characterize some of those findings of fact as resulting from the trial court's discretionary view of the evidence, and not as factual errors due to the court's delay. _See Culbertson v. Culbertson_, 90 So. 3d 355, 356 (Fla. 4th DCA 2012) ("A trial

2

court's time sharing determination is reviewed under the abuse of discretion standard of review.").

For example, the final judgment states, in pertinent part, "The Court rejects the Father's opinion that the Palm Beach County has superior schools to Tallahassee. Good and bad schools are at both locations." The father challenges that finding on the basis that, during the trial, he presented Florida Department of Education (FDOE) "school grades" indicating the Leon County elementary school in which the mother had enrolled the child was a "C" school, whereas if the child resided with the father in Palm Beach County, the child would attend an "A" school.

While the father accurately portrays those schools' FDOE grades, the father neglects to mention the trial court's additional finding that the mother "sought out a recommended School of the Arts to expose the minor child to other possible interests." Thus, when the trial court's findings are viewed in full context, the trial court appears to have weighed the schools' FDOE grades with the alleged benefit which the Leon County school's recommended program offered to the child. As such, we conclude no "factual error" occurred on this specific finding.

## 2. *Failure to Rule on the Father's Indirect Civil Contempt Motion*

Although the trial court did not make a "factual error" in weighing the benefits of the Leon County school versus the Palm Beach County school, the trial court's final judgment does not reflect the court considered the father's motion for indirect civil contempt as it related to the schooling issue. We agree with the father that remand is necessary for the trial court to rule on the father's motion for indirect civil contempt and consider that ruling in the overall context of its parenting plan determination.

In the motion for indirect civil contempt, the father alleged the mother violated a temporary relief order by not timely returning the child to the father in early August 2018, when the child was to be enrolled in kindergarten. At the trial, the father argued the reason why the mother did not timely return the child was to give herself the opportunity to enroll the child at a Leon County school, and prevent the father from enrolling the child at a Palm Beach County school, thereby gaining an advantage in the trial court's parenting plan determination. According to the father's motion, "[p]ermitting [the] Mother's violation to go overlooked would be, in essence, to send her the message that the Orders of the Court are optional and are only to be followed when such orders benefit her."

The mother testified she did not willfully violate the temporary relief order, which was silent on where the child would be enrolled in school. According to the mother, she enrolled the child at a Leon County school because the child had lived there all his life. The mother further testified the child should remain enrolled in the Leon County school because "[h]e has developed a routine. He has developed friends." The mother argued that, at most, the father should receive one week of makeup time-sharing.

After the mother testified, the trial court remarked to the mother, "My concern is you don't seem to feel that dad is in your child's best interest based on some actions that I have seen you take, and that is concerning." Later, within the final judgment, the trial court acknowledged in its findings of fact that the father had argued the mother violated the temporary relief order by not timely returning the child. The trial court further acknowledged the mother's testimony that she did not timely return the child to the father because she had enrolled the child in the Leon County school without having consulted the father.

Despite having made those findings, the trial court did not rule on the father's motion for indirect civil contempt within the final judgment. The father argues the lack of ruling enabled the mother to have benefitted from her own misconduct, because the trial court based its parenting plan, in part, on the fact that the child had already been enrolled in a Leon County school, which continued for an entire school year while the parties awaited the final judgment. In support, the father relies on Florida Family Law Rule of Procedure 12.615(d), which states, "After hearing the testimony and evidence presented, the court *shall* enter a written order granting or denying the motion for contempt." (emphasis added).

The father's reliance on rule 12.615(d) is misplaced. Rule 12.615 "governs civil contempt proceedings in *support matters* related to family law cases." Fla. Fam. L.R.P. 12.615(a) (emphasis added). This issue did not involve a support matter, and no comparable rule mandates a written order granting or denying a motion for contempt on a time-sharing matter.

Despite the father's misplaced reliance on rule 12.615(d), we nevertheless agree with the father that, on these facts, the trial court should have ruled on the father's motion for indirect civil contempt within the final judgment and considered that ruling in the overall context of its parenting plan determination. The mother's alleged violation of the temporary relief order, willful or not, unquestionably affected where the child became enrolled in school. The final judgment, however, is silent on whether that alleged violation affected the parenting plan determination. Remand is necessary for this consideration to be expressly stated.

4

### *Conclusion*

Based on the foregoing, we are compelled to reverse the trial court's final judgment, but only for reconsideration of the two issues addressed above within the overall context of the parenting plan determination, and not for a new trial or further hearing. The trial court shall promptly issue an amended final judgment complying with our remand instructions.

Rather than having the parties' time-sharing arrangement revert to its pre-final judgment status, we direct that the final judgment's parenting plan shall remain as the status quo pending the trial court's issuance of an amended final judgment complying with our remand instructions.

Neither the parties nor the trial court should interpret this opinion as suggesting that the amended final judgment should modify or maintain the status quo parenting plan. The trial court maintains its discretion to make that decision after complying with our remand instructions.

*Reversed in part and remanded with instructions.*

GROSS, J., concurs.
WARNER, J., dissents with opinion.

WARNER, J., dissenting.

In my opinion, this case should be reversed and remanded for a new trial, or at least a reconsideration after the court is given the opportunity to read the transcript of the trial. The delay in entering a final judgment in this case appears to have caused the judge's memory to fade as to the particular facts of this case. There are sufficient inconsistences between significant facts and the testimony that I cannot conclude that the court did not abuse its discretion, particularly with respect to the time-sharing plan.

As noted by the majority, the court mis-remembered who was guilty of a criminal offense and that the mother affirmatively violated the temporary order. I think that the court's commentary about the schools in both Leon County and Palm Beach County, noted in the majority opinion, was simply a reflection of another failure to remember the testimony. The court considered the fact that the father worked two jobs as a strike against his request to be the primary parent, without remembering that the father said he would quit his weekend job if the child were with him.

5

Most importantly, the court entered a time-sharing plan which simply cannot be in the child's best interest. The court required the child to reside primarily with the mother, then with the father for one half of the summer school vacation, half the winter vacation, all of spring break, half of Thanksgiving holidays, Father's Day, and all other school holidays. The court also directed that the father shall exercise time sharing at least one weekend per month, preferably when there is a three-day weekend.

Thus, the six-year-old child will be spending at least twelve to fourteen hours in a car every month so that the time sharing can be accomplished. This is contrary to both parents' suggested resolution. I cannot conclude that it is in the best interest of this child to have to travel this amount of time and distance on the road each month to spend such a short amount of time with his father.

For these reasons, I would reverse for a reconsideration and to admit additional testimony, if necessary, given the passage of time since the final order.

\*       \*       \*

***Not final until disposition of timely filed motion for rehearing.***